<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES WALKER,             :
                               Civil Action No. 08-1378 (DMC)
        Petitioner,   :

        v.             :        O P I N I O N

MICHELLE RICCI, et al.,      :

        Respondents.   :

**APPEARANCES:**

James Walker, <u>Pro</u> <u>Se</u>         Steven E. Braun, Esq.
#235909C-4709             Passaic County Prosecutor's
New Jersey State Prison        Office
P.O. Box 861              401 Grand Street
Trenton, NJ 08625         Paterson, NJ 07505
                            Attorney for Respondents

**CAVANAUGH, District Judge**

Petitioner James Walker, a prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Michelle Ricci and the Attorney General of New Jersey.

For the reasons stated herein, the petition must be denied.

BACKGROUND

A.    **Factual Background**

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division").[1]

> After defendant James Walker's motions to suppress evidence and to exclude his confession were denied, he pled guilty to the first degree aggravated manslaughter of Javid Patel, N.J.S.A. 2C:11-4a(1) and first degree robbery, N.J.S.A. 2C:15-1 & 2-6.  At the plea hearing, defendant testified to this factual basis.  On February 18, 2002, he was at the intersection of Passaic Avenue and Grove Street in Passaic armed with a loaded .45 caliber gun.  He saw a black Infiniti and decided to commit an armed robbery.  He approached the Infiniti from the passenger's side and fired his gun twice into the vehicle.  After the shooting, he hid his weapon at an apartment on Henry Street.

> The judge imposed a twenty-five year term with a NERA minimum term on the manslaughter conviction, and a concurrent twenty-year term with a NERA minimum term on the robbery conviction.  We affirm the convictions, but remand for resentencing.

> The following proofs were presented by the State at the motion to suppress hearing.  Nine days after the murder, Passaic Police Sergeant Eduardo Dehais spoke with a confidential informant, who told him that the night of the murder, "Tron" and "Mira" hid the weapons used to shoot Patel at an apartment on Henry Street.  According to Dehais, this information was corroborated by two other sources.  It was later determined that "Tron" is the street name for defendant and "Mira" is

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

the street name for his cousin, co-defendant Rashid
Walker.  Dehais determined that the tenant of the
apartment was Lakina Dickerson.  That same day, five
detectives went to Dickerson's apartment.  They
identified themselves and entered the apartment where
they found four young men and Dickerson's four-year old
daughter.  Dickerson, however, was at the liquor store.

Dickerson returned to the apartment and spoke with
Passaic Police Detective Luis Guzman.  According to
Guzman, Dickerson indicated that she leased the
apartment and consented to a search thereof.  She did
not indicate at that time that one room in the
apartment was sub-let to her cousin Sakim Lee, or that
her consent to search did not extend to Lee's room.

The detectives searched the apartment.  As Guzman
approached a high closet in Lee's room, Dickerson's
daughter covered her ears and said "no, no, no; that's
where those things are that go boom."  Inside the
closet, Guzman found a Colt .45 caliber handgun, an
Auto-Ordnance .45 caliber, and two loaded magazines.
Ballistic tests subsequently proved that shell casings
and projectiles from the murder scene matched the two
firearms seized.

Jakim Henry, Akkem Glaze and Rahim Horne,
testified at the hearing for defendant.  The three were
present at the Henry Street apartment when the search
occurred.  According to them, the police officers
entered the apartment heavily armed, handcuffed the
occupants, and searched the apartment without consent.
The three testified that Lee's room was always
padlocked when Lee was not present.  According to
Henry, the police kicked down the door to Lee's room.

Dickerson testified that Lee lived at the
apartment with her and her two children.  Lee paid rent
for his room and kept a heavy, gray lock on the door
when he was not home.  According to Dickerson, when she
returned from the liquor store, she saw police
surrounding her apartment.  She went in and saw her
friends on the floor with plastic handcuffs.  Two
police officers took her into Lee's room and told her
that they believed that a weapon used in a murder was
present in the house and asked for her consent to
search the apartment.  She was given a form to sign.
However, she cannot read.  No one read the form to her.

3

She did not remember being told that she could refuse
to consent to the search. She was scared and believed
that she could not refuse the search. She signed the
consent form and informed the officers that the room
they were in belonged to her cousin. Dickerson
testified that, if she were at the apartment when the
police initially arrived, she would have allowed them
to come in, but only "to talk." Dickerson indicated
that at the time she spoke to the officers, she had
consumed a forty-ounce bottle of beer in approximately
thirty to thirty-five minutes.

    The judge ruled that defendant, who did not reside
at the Henry Street apartment, nor was present during
the search, did not have standing to challenge the
seizure of the weapons because of the length of time
that the weapons remained in the room and the number of
people who knew that the weapons were there. Thus, the
judge reasoned, defendant had relinquished his interest
in the property that was seized. The judge also found
that, even if defendant had standing to challenge the
seizure, that the motion to suppress should be denied
because Dickerson was appropriately advised of her
rights and she signed the consent form.

             Defendant's Statement To Police
    Defendant was arrested at approximately 4:00 a.m.
on February 28, 2002. Shortly after the arrest,
Passaic Police Sergeant Hershel Rawls testified at the
hearing on a motion to exclude defendant's confession
that he spoke with defendant at police headquarters.
Defendant, who had signed a Miranda waiver form, denied
having any knowledge of the murder. The next day, at
defendant's request, Rawls had another conversation
with defendant at the Passaic County jail. Defendant
signed another Miranda waiver form and admitted his
participation in the crime. Defendant told Rawls that
on the night of the shooting, he was on 3rd Street,
smoking cigarettes dipped in embalming fluid. He ran
into a friend, Dayron Johnson, whose street name is
"Nam." They decided to rob a drug dealer. About
one-half hour later, they "bumped into" Patel, who was
sitting in his Infiniti talking on the phone.
Defendant admitted walking up to the Infiniti with Nam.
Defendant stated:

                           4

> [I] knocked on the front passenger
> window and I told him to open the window.  He
> started the car and rolled down the back
> passenger window.  So I stuck the gun inside
> and told him to get out the car.  He just put
> it in reverse and slammed on the gas, peeled
> tires and everything.
>
>                          . . .
>
>
> I squeezed a shot inside the car.  My
> arm kinda got caught inside the car.  I
> pulled my arm out and went in like a full
> circle.  I heard two or three more shots,
> then I squeezed off another shot at like the
> hood.  Then I took off running down Grove
> toward Broadway.

Defendant also stated that Nam fired two or three
more shots at Patel.  Defendant took his gun and the
one used by Nam and ran from the scene.  He admitted
taking the two guns, one a black .45 automatic and the
other a chrome .45 caliber, to the Henry Street
apartment.

At the hearing, defendant testified to a different
version of events.  According to defendant, at
approximately 4:00 a.m. on February 28, 2002, he and
his girlfriend were pulled over by the police.  With
guns drawn, the police instructed him to exit the car.
He was taken into a second-floor interview room at
police headquarters and handcuffed to a chair.  He was
left alone for approximately one hour.  After receiving
his Miranda warnings, he was asked about the homicide.
He denied any involvement.  He was left in the
questioning room until he was taken to the municipal
court.  Upon his return to headquarters, he was brought
back into the interview room where he remained until he
was taken to the Passaic County Jail.  He was not given
anything to eat nor allowed to sleep.  He was
questioned on and off for the entire time.  He asked to
speak with a lawyer or his family multiple times.
These requests were denied.

The next day, defendant recalled receiving Miranda
warnings again.  He denied asking to speak to a
detective.  He repudiated his confession, asserting

that the statement attributed to him was fabricated by
the detectives.

The judge denied defendant's motion to suppress
the confession to police, holding that defendant was
properly given his rights.  Therefore, the confession
was given voluntarily and with knowledge of defendant's
constitutional rights.  The judge found that the
statement reflected exactly what defendant had
responded to Detective Rawls's question.  The judge
found defendant's testimony at the hearing not
credible.

State v. Walker, 2006 WL 3025627 at *1-*2 (App. Div. 2006),

certif. denied, 189 N.J. 427 (2007)(internal citations omitted).

B.   **Procedural History**

A Passaic County Grand Jury returned an indictment charging

Petitioner, and co-defendant Rashid Walker with murder; second

degree possession of a weapon with an unlawful purpose; first-

degree robbery; and felony murder, in violation of New Jersey

state law.  Petitioner was also charged with fourth degree false

reporting; two counts of unlawful possession of a weapon; and

third degree receiving stolen property.  Co-defendant Rashid

Walker was also charged with additional crimes, not relevant

here.

During the period from October 21 through November 3, 2003,

hearings were held before the trial judge on Petitioner's motion

to suppress his statement to police, and suppress the evidence

seized.  On October 30, 2003, the motion to suppress the

statement was denied, and on November 3, 2003, the motion to

suppress the evidence seized was denied.

6

On the same day that the judge denied the Petitioner's motion to suppress the evidence seized, Petitioner entered into a plea agreement with the State.  Pursuant to the terms of the agreement, Petitioner pleaded guilty to aggravated manslaughter (amended from the murder charge) and first degree robbery.

On December 19, 2003, the judge imposed a sentence of 25 years with an 85% parole bar and an additional five year period of parole supervision on the aggravated manslaughter conviction. On the first-degree robbery conviction, a concurrent sentence of 20 years, with an 85% parole bar was imposed.  All remaining charges in the indictment were dismissed on the State's motion.

Petitioner appealed.  On October 26, 2006, the Superior Court of New Jersey, Appellate Division ("Appellate Division") affirmed the conviction but remanded for resentencing. Petitioner filed a petition for certification with the New Jersey Supreme Court, which was denied on January 10, 2007.

Petitioner filed this habeas petition on March 17, 2008. This Court issued an Order to Show Cause for Petitioner to show why the petition should not be dismissed for failure to exhaust state court remedies.  Petitioner responded, and Respondents were ordered to reply to the exhaustion issue.  This Court issued an Opinion and Order denying Petitioner's request to stay his petition, and an order advising Petitioner of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  Petitioner did

7

not respond to the Mason order, and on April 27, 2009, an Order

to Answer was issued to Respondents.  Respondents filed an Answer

to the petition and the available state court record on or about

October 30, 2009.

## C.   Petitioner's Claims

Petitioner cites three grounds for relief:

(1)   Petitioner's right to counsel and right to remain silent

were violated when investigating officers overborne

Petitioner's will;

(2)   Petitioner's right to be free from unreasonable searches and

seizures was violated when investigation officers failed to

obtain a warrant;

(3)   Evidence seized should have been suppressed.

(Petition, ¶ 12).

These grounds have been exhausted in the state courts.

## DISCUSSION

## A.   Standards Governing Petitioner's Claims.

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent

part:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of
> the United States.

8

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
See id. at 409.  In determining whether the state court's
application of Supreme Court precedent was objectively
unreasonable, a habeas court may consider the decisions of
inferior federal courts.  See Matteo v. Superintendent, 171 F.3d
877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal caselaw, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent." Priester
v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.
Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002)).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers.  See
Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404
U.S. 519, 520 (1972).  A pro se habeas petition and any
supporting submissions must be construed liberally and with a
measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d
Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d

Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir.

1969), <u>cert.</u> <u>denied</u>, 399 U.S. 912 (1970).

B.   **Petitioner's *Miranda* Claims Must Be Denied.**

Petitioner alleges that his Fifth and Sixth Amendment rights

were violated in the procedures used by police to obtain his

incriminating statement, and that the statement, and evidence

collected as a result of the statement, should have been

suppressed from trial.[2]

The Fifth Amendment provides, in part, that no person "shall

be compelled in any criminal case to be a witness against

---

[2]   Initially, this Court notes that Petitioner's guilty plea
precludes habeas review of this constitutional claims.  As the
Supreme Court explained in <u>Tollett v. Henderson</u>, 411 U.S. 258,
267 (1973):

> [A] guilty plea represents a break in the chain of
> events which has preceded it in the criminal process.
> When a criminal defendant has solemnly admitted in open
> court that he is in fact guilty of the offense with
> which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry
> of the guilty plea.  He may only attack the voluntary
> and intelligent character of the guilty plea by showing
> that the advice he received from counsel was not within
> the standards set forth in <u>McMann</u> [<u>v. Richardson</u>, 397
> U.S. 759 (1970)].

<u>Id.</u> (*abrogated on other grounds by* <u>Puckett v. United States</u>,
--- U.S. ----, 129 S. Ct. 1423, 1430 n.1 (2009) ("It is well
settled that a voluntary and intelligent plea of guilty made by
an accused person, who has been advised by competent counsel, may
not be collaterally attacked").  However, this Court will address
the merits of Petitioner's claims for the sake of clarity and
comprehensiveness.

himself."  U.S. Const. amend. V.   The Fourteenth Amendment

incorporates the Fifth Amendment privilege against self-

incrimination.  See Malloy v. Hogan, 378 U.S. 1, 8 (1964).   In

Miranda v. Arizona, 384 U.S. 436 (1966), the Court held that

"without proper safeguards the process of in-custody

interrogation ... contains inherently compelling pressures which

work to undermine the individual's will to resist and to compel

him to speak where he would not otherwise do so freely."  384

U.S. at 467.  When police ask questions of a suspect in custody

without administering the required warnings, Miranda dictates

that the answers received be presumed compelled and that they be

excluded from evidence at trial in the State's case in chief.

See Oregon v. Elstad, 470 U.S. 298, 317 (1985).  Thus, a

confession taken during a custodial interrogation without the

provision of Miranda warnings violates the privilege against self

incrimination.  See Thompson v. Keohane, 516 U.S. 99 (1995).

    "To safeguard the uncounseled individual's Fifth Amendment

privilege against self-incrimination, the Miranda Court held,

suspects interrogated while in police custody must be told that

they have a right to remain silent, that anything they say may be

used against them in court, and that they are entitled to the

presence of an attorney, either retained or appointed, at the

interrogation." Thompson, 516 U.S. at 107; see also Miranda, 384

U.S. at 479.  The Miranda Court outlined the procedures to be

12

followed after the police provide these warnings.  If the accused requests counsel, then "the interrogation must cease until an attorney is present." Miranda, 384 U.S. at 474.

Here, the New Jersey courts held pretrial motions concerning Petitioner's confession.  The Appellate Division found that the trial court did not err in denying the motion to suppress the confession.  See State v. Walker, 2006 WL 3025627 (N.J. App. Div. Oct. 26, 2006) at *7.  Citing and quoting Miranda, the Appellate Division held:

> Defendant argues that the trial court erred in denying his motion to suppress the confession.  We disagree.

> Confessions obtained by the police during a custodial interrogation are barred from evidence unless the defendant has been advised of his or her constitutional rights. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Thus, defendant's confession to police is admissible if it results from the "voluntar[y], knowing[ ] and intelligent [ ]" waiver of his constitutional right to remain silent.  Ibid.

> Defendant does not contend that the police failed to properly administer his Miranda warnings.  Rather, he contends that his constitutional rights were violated when he asked for counsel and was denied his request.  Such action by the police if it had occurred, would have violated the principle that once a defendant invokes his right to counsel, the interrogation must immediately cease.  Interrogation may not resume "unless the accused himself initiates further communication, exchanges or conversations with the police." State v. Kennedy, supra, 97 N.J. at 285 (citing Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); State v. Wright, 97 N.J. 113, 122 (1984).

However, defendant's allegation is belied by
Detective Guzman's testimony, which the judge credited.
The admissibility of defendant's confession is reviewed
pursuant to the sufficient credible evidence standard.
We determine "whether the findings made [by the trial
court] could reasonably have been reached on sufficient
credible evidence present in the record." Judged
against that standard, defendant's allegation that he
asked Guzman for an attorney before answering questions
must be rejected because the judge did not find it
credible.

Defendant also argues that because the weapons
were seized in an illegal search, his custodial
statements should also be suppressed as fruit of the
poisonous tree. See, e.g., Wong Sun v. United States,
371 U.S. 471, 485 (1963). However, we have concluded
that the search was proper. Therefore, this argument
is moot. Moreover, even if the search was not
justified, the confession is admissible pursuant to the
attenuation exception to the poisonous tree doctrine.
[S]ee Silverthorne Lumber Co. v. United States, 251
U.S. 385, 392 (1920) ("If knowledge of [the facts are]
gained from an independent source they may be proved
like any others").

Here, the poisonous tree doctrine would not apply
because the police would have questioned defendant and
obtained his confession even if the search had not
occurred. Detective Dehais had received information
from a confidential source regarding defendant's
involvement in the murder.

Id. at *7-*8 (internal citations omitted).

Petitioner's allegation that the state courts erred in

denying his Miranda suppression motion lacks merit. The state

courts invoked the correct law, held a pretrial hearing, and

reasonably determined the facts in light of the evidence

presented. Based on a review of the record, including the

pretrial Miranda hearing, this Court can fathom no reason to

upset the findings of the state court. See Fahy v. Horn, 516

F.3d 169, 196 (3d Cir. 2008) (state court decision to reject petitioner's request for suppression was not "contrary to" Supreme Court precedent, as state court adhered to the correct standard; further, "the suppression court was entitled to make the credibility determination that it did in the face of conflicting testimony, and it applied the correct law to its findings of fact and came to a reasonable conclusion"). This claim for habeas relief will be denied.

C. **Search and Seizure Claim**

Petitioner alleges in Ground 2 that on February 27, 2002, detectives received information from a confidential informant. Afterwards, the detectives failed to obtain a warrant and seized his apartment without any legal authority. Petitioner also claims in Ground 3 that the evidence seized from the apartment should have been suppressed as a result of an illegal search.

The Appellate Division explored these claims and found that the trial court's motion to suppress was properly denied. See State v. Walker, 2006 WL 3025627 (N.J. App. Div. Oct. 26, 2006). The Appellate Division found that Petitioner had standing to challenge the search and seizure, even though he was not present at the apartment at the time of the search. See id. at *4. However, the Appellate Division, citing New Jersey Supreme Court and United States Supreme Court cases, found that Dickerson's consent to search the apartment was not the product of police

15

coercion, rather, the police acted properly in acting on

Dickerson's consent, and that Dickerson's consent was valid.  See

id. at *5-*6.  The Appellate Division found:

> Here, the judge found that the police did not
> badger Dickerson to consent.  To the contrary, the
> judge found the police account to be credible.  The
> judge credited the testimony that the police had no
> knowledge of Dickerson's illiteracy, and that she made
> no indication when reviewing the consent form that she
> could not understand its contents.  Furthermore,
> although police had secured the premises until her
> return from the liquor store, there is no indication,
> based on the officers' testimony, that any force was
> involved in obtaining her consent.  The judge did not
> credit testimony that force or coercion was used by the
> officers.

Id. at *5.  Further, the Appellate Division held: "Here, the

police had a reasonable belief that Dickerson had the authority

to consent to a search of the entire apartment.  Therefore, they

acted properly in searching Lee's room based on her consent."

Id. at *6.  The Appellate Division went on to hold that the

police "reasonably conducted an initial inspection of the

apartment before consent was granted, because there was probable

cause that the occupants were engaged in criminal conduct."  Id.

In this case, Petitioner's Fourth Amendment claim must be

assessed by reference to the Supreme Court's decision in Stone v.

Powell, 428 U.S. 465 (1976), which precludes habeas review of

Fourth Amendment claims that have been litigated in state court.

The Supreme Court, in Stone held:

> [W]here the State has provided an opportunity for
> full and fair litigation of a Fourth Amendment claim, a

> state prisoner may not be granted federal habeas corpus
> relief on the ground that evidence obtained in an
> unconstitutional search or seizure was introduced at
> his trial.  In this context the contribution of the
> exclusionary rule, if any, to the effectuation of the
> Fourth Amendment is minimal and the substantial
> societal costs of application of the rule persist with
> special force.

Stone, 428 U.S. at 494-95.  But if the state does not provide any

corrective process to redress alleged Fourth Amendment

violations, or where the state does offer a corrective process

and defendant is precluded from using it, federal habeas review

may be warranted.  See Gates v. Henderson, 568 F.2d 830, 840 (2d

Cir. 1977).

Petitioner did raise this Fourth Amendment claims on direct

appeal in state court.  Thus, Petitioner's Fourth Amendment claim

was fully and fairly litigated at that stage of the appeal

process, and habeas review now would be precluded under Stone v.

Powell.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or

judge issues a certificate of appealability, an appeal may not be

taken from a final order in a proceeding under 28 U.S.C. § 2254.

A certificate of appealability may issue "only if the applicant

has made a substantial showing of the denial of a constitutional

right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree

with the district court's resolution of his constitutional claims

17

or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 5/6/10